Cowin, J.
MaxB. Brenner and William B. Leatherbee, Jr., Trustees of the Valley Garden Development Trust, as “Declarants,” created the Hilltop Gardens Condominium (“Hilltop”) by Master Deed dated January 24, 1986. In May 1987, the declarants of the Hilltop master deed simultaneously filed a “Partial Removal of Land” and a Summit Place Condominium (“Summit”) master deed which established Summit. Section 5 of the Hilltop master deed defines cpmmon areas and facilities as “(t]he land described in Exhibit A...” Exhibit A describes the area of land owned by Hilltop and it includes the land on which Summit was built. Thus, Summit was built on a parcel of land thatwas removed from the Hilltop Gardens Condominium.
The document which removed a portion of the Hilltop land to create the new Summit also granted the Summit residents an easement to use the swimming pool which was on common area land owned by Hilltop. From 1987 through 1990, both condominium complexes shared the pool and expenses. In 1991, a dispute arose between Summit and Hilltop concerning the use of the swimming pool and how the expenses should be apportioned. Hilltop threatened to bar Summit unit owners from the pool. As a result of that dispute, Summit brought this action on May 24, 1991 seeking injunctive and declaratory relief and money damages. The Summit trustees, as plaintiffs, sought ajudgment that the defendants, Hilltop Trustees, have no authority to prevent access and use of the pool by Summit and requested that Hilltop be enjoined from preventing such access and use.[1] Hilltop answered claiming that the entire Summit Condominium was built in contravention of certain provisions in Hilltop’s master deed.
A jury-waived trial was held on May 25 and May 26, 1994. At their request, the parties were given an additional two weeks in which to file requests for findings of fact and rulings of law. The witnesses at trial called by plaintiffs were the following: Philip Giordano, a resident and trustee of Summit; John S. Rodman, Esq., an attorney who drafted the documents here in issue; and Mark Levy, one of the original developers of Hilltop. The only defense witness was Timothy McCusker, a resident and trustee of Hilltop.
In 1991, when this case was initiated, Summit obtained a preliminary injunction maintaining Summit’s right to use the pool upon payment of certain shared expenses. Summit paid the required amounts and joint use of the pool continued until 1994. In April 1994, Hilltop indicated that the pool would be closed for the 1994 season. As a result of said action, on the first day of trial, Summit sought to amend its complaint to include a request that Hilltop be ordered to open the pool facilities. Hilltop assented to the motion. The motion to amend is hereby allowed.[2]
Based upon the evidence presented at trial and all reasonable inferences therefrom, I find as follows.[3]
FINDINGS OF FACT
1. Plaintiffs are the Trustees of The Summit Place Condominium (“Summit”).
2. Defendants are the Trustees of the Hilltop Gardens Condominium (“Hilltop”).
3. Hilltop was created from a pre-existing series of Garden Apartment buildings. In 1986, the Developers, William Leatherbee, Jr., and Max Brenner (“Developers” or “Declarants”), created the Hilltop Garden Condominium by master deed dated January 24, 1986, and recorded the same with the Norfolk Registry of Deeds, Book 6932, Page 272 (Exhibit 1). Upon the creation of Hilltop Gardens Condominium from several apartment buildings, all of the land within the condominium, including that on which Summit was subsequently built, was part of the common area of Hilltop.
4. Attorney John Rodman drafted the Hilltop and Summit Condominium documents in connection with his representation of Max Brenner and William Leatherbee, Trustees, the developers of the Hilltop Gardens and Summit Place Condominiums.
5. Paragraph 14 of the Master Deed of Hilltop (“Hilltop master deed”) reserves certain rights for the declarants or developers therein. Paragraph 13.F. provides that the declarants may assign any and all of their reserved rights to any person.
6. Paragraph 14(A) of the Hilltop Master Deed reserves the right to “remove land from the condominium." Paragraph 14 also reserves the declarants’ right to build additional phases within Hilltop. The developers’ intent was both to remove land from Hilltop and/or add new phases to Hilltop.
7. The reserved right to build additional phases and the reserved right to remove land are separate rights; therefore the reservation of rights is not limited to removal only for creation of future phases.
*287 8. Both rights were exercised. Land was removed from Hilltop and the removed land was developed into the three-phase Summit.
9. Paragraph 14 further provides that the reserved right to build additional units within Hilltop is limited to 98 new units, so that the total number of units does not exceed 242. This number was not exceeded.
10. The owners of Hilltop took title subject to Paragraph 14 of the Hilltop master deed. Said paragraph creates the right of removal.
11. The reserved rights of the declarants under Paragraph 14 of the Hilltop master deed include the right to remove land with its appurtenant rights, provided that the remaining Hilltop Gardens Condominium and its units are not “placed in violation of any City, State or Federal Ordinance, Regulation or Statute.” No such violation occurred.
12. Under Paragraph 14(A), the land removed from Hilltop and subsequently used to create Summit included under Paragraph 5 of the Hilltop master deed as amended the appurtenant rights to use the pool and the parking areas in common with Hilltop.
13. Some reserved rights under the master deed were exercised by a Partial Removal of Land from Hilltop Gardens Condominium (“partial removal document”), dated May 13, 1987, and recorded with the Norfolk County Registry of Deeds in Book 7566, Page 57. Said instrument expressly reserved as appurtenant rights in the removed land, the right and easement, in common with the unit owners of Hilltop, to use the swimming pool, pool area and certain parking areas.
14. Subsequently, Summit was created on the removed land by the recording of the Summit master deed. The removed land carried the appurtenant right and easement to use those designated pool and parking areas in common with Hilltop.
15. The Fourth Amendment to the Hilltop master deed, Article Ninth, amends the master deed, paragraph 14, Section 5.E, by adding:
With respect to the easements of the abutting Summit Place Condominium to use pool facilities and certain parking facilities, the equitable administration of such share facilities shall be under the joint auspices of the Hilltop Gardens Condominium Trust and the Summit Place Condominium Trust.
Summit’s Master Deed, paragraph 14, Section 5.F provides:
F... . With respect to the easements to use the pool facilities and certain parking facilities situated on the abutting Hilltop Gardens Condominium property, equitable administration of such shared facilities shall be under the joint auspices of the Summit Place Condominium Trust and the Hilltop Gardens Condominium Trust. Exhibit 9.
Since 1987, r esidents of both Summit and Hilltop have shared use of. the pool.
16. The Hilltop master deed, Paragraph 14 grants to the developers an irrevocable power of attorney:
in the event that notwithstanding the provisions of this Paragraph 14 to the contrary, it shall ever be determined that the signature of any Unit Owner, other than the Declarant is required on any amendment to the Master Deed which adds or removes additional land and/or new phases to the Condominium, then the Declarants shall be empowered, as attorneys-in-fact for the Owner of each Unit and the Condominium, to create and deliver any such amendment by and on behalf of and in the name of each such Unit Owner . . .
(Emphasis supplied) and
this power of attorney is coupled with an interest, and hence shall be irrevocable and shall be binding upon each and every present and future Owner of a condominium in the Condominium.
17. Since at least 1987, pool expenses were shared by Hilltop and Summit.
18. Between 1987 and 1991, the two condominiums shared use and expenses of the pool without problem.
19. In 1991, Defendants demanded that Plaintiffs pay up front all their share (41%) of the 1991 pool expenses. This was inconsistent with the parties’ practice.
20. In May 1991, Defendants threatened to bar Summit residents from using the pool and to withhold pool passes for 1991.
21. On or about May 23,1991, defendants’attorney raised for the first time the contention that plaintiffs’ right to use the pool was invalid and improper.
22. Defendants closed the pool facilities for 1994.
23. Defendants closed the pool without notice to or consultation with the plaintiffs.
24. The closing of the pool by defendants will result in irreparable harm to the plaintiffs.
DISCUSSION
It is undisputed that the land that was removed to build Summit was part of Hilltop’s common area. For authority to remove the land, Summit relies upon section 14A of Hilltop’s master deed in which the defendants reserved a right to remove certain parcels of land.[4]
Hilltop argues that this power in §14 is superseded by the provisions of §12. Section 12 is a so-called Fannie Mae, Freddie Mac provision that begins with the phrase “Notwithstanding anything to the contrary elsewhere in this Master Deed . . .” Section 12 then sets forth limits on the powers of the trustees of Hilltop.[5] It provides that the trustees may not take certain action without the prior written approval of 75% of the first mortgagees and owners[6] of the individual units. One of the things the trustees may not do (unless so authorized) is to “. . . transfer the Common Areas and Facilities . . Hilltop maintains that the “notwithstanding” language in §12 means that §14 *288 (as something contrary elsewhere in the master deed) succumbs to the provisions of §12.
This Court concludes otherwise. Section 14 is not subservient to §12 because the two sections are not inconsistent. Section 12 only limits the powers of the trustees and is not applicable to the issue here. The issue here concerns a right reserved in §14 by the declarants. The trustees and the declarants are different legal entities. The declarants, named in the introductory section of the Master Deed, are Max B. Brenner and William B. Leatherbee, Jr., the creators of the Hilltop condominium. The trustees are the ones who manage and regulate Hilltop.[7] Thus, the limitation on the powers of the trustees in §12 is in no way inconsistent with the powers reserved to the declar-ants in §14. Accordingly, §14 is not “to the contrary” and §12 does not prevail over §14.
The rights reserved to the declarants by §14 are the right to remove parcels and to build additional phases. Further, the right to give later phase owners exclusive use of common areas and facilities (also reserved to the declarants by §14) certainly includes the right to give later phase owners non-exclusive use of such areas.
The conclusion that §12 and §14 are not inconsistent is borne out by even a casual reading of the master deed. The declarants have made obvious efforts at various places in the deed to reserve their right unilaterally to make use of the common areas in later phases. See, for example, §5F: “The Declarants have reserved the right pursuant to paragraph 14 hereof to modify the boundaries of units to be included in the condominium as part of future phase(s), and such modifications may result in corresponding adjustments in the definition of the Common Areas and Facilities with respect to such units ...” The declar-ants did not intend their power to be obstructed by the Hilltop unit owners, the people who obviously would have an interest in doing so.
The people who became unit owners in Hilltop were informed before they purchased their units, by the provisions of the master deed, that the development was to be a phased condominium development. They were alerted that the declarants were planning to add units; that the declarants were reserving the right to remove certain parcels from Hilltop; and that the declarants were reserving the right to take portions of the common areas and use them in later phases. The original unit owners took their deeds subject to the declarants’ reservation of these rights.
Further, the action of the parties during the years since the inception of these developments supports this interpretation of the provisions. From 1988 until 1991 there was joint use of the pool and there was no objection to the shared pool arrangement. In 1991, a dispute over the pool expenses arose. The dispute did not concern any alleged invalidity in title. The concept of invalid title did not arise until it was raised as a defense in this lawsuit in June 1991.
To the extent questions of intent are involved, the best evidence is the document itself. Evidence was also introduced at trial of intent by the drafter of the master deed and by one of the original developers. This evidence was that the intent always was to remove parcels C, D and E to create the separate condominium of Summit and to remove easement rights to the pool and pool area.
RULINGS OF LAW
1. Sections 12 and 14 of the Hilltop master deed are not inconsistent. Section 12 concerns and limits the powers of the trustees. Section 14 concerns the rights of the declarants. The right at issue here is one reserved by the declarants in section 14.
2. The rights reserved to the declarants by section 14 are the rights to remove parcels and to build additional phases.
3. The declarants also reserve in section 14 the right to give later phase owners exclusive use of common areas. This includes the right to give later phase owners non-exclusive use of common areas.
4. Where there is uncertainty about the meaning of a document, the performance of the parties is relevant to explain and remove the uncertainty.
5. The performance of the parties in this case is further evidence supporting the above rulings.
6. If the “notwithstanding” language in Paragraph 12J prevails over Section 14, that language would render the power of attorney contained in Section 14 meaningless.
7. If Hilltop’s master deed, Paragraph 12J2(v) and (vii) and Paragraph 11 were to take precedence over Paragraph 14, that would be inconsistent with the developers’ intent, would render the power of attorney language in Paragraph 14 meaningless and would be inconsistent with the conduct of the parties.
8. Based upon the provisions of Paragraph 14 of the Hilltop master deed and the partial removal document, the land removed for the creation of Summit (constituting a common area) includes the appurtenant right and easement for use of the pool and specified parking areas in common with Hilltop.
9. The removal of land from Hilltop including the said appurtenant rights did not place the remaining Hilltop Gardens Condominium land in violation of applicable law.
10. Defendants’ demand in 1991 that plaintiffs pay up front all their share of the 1991 pool expenses was inconsistent with the parties’ agreement.
11. Defendants’ closing of the pool facilities for 1994 violated the Summit and Hilltop master deeds.
Action On Plaintiffs’ Requests:
1. Denied as irrelevant.
2. Statement of law denied as irrelevant. Remainder denied as request for finding and argument.
3. Statement of law denied as irrelevant. Remainder denied as request for finding and argument.
*289 4. Statement of law denied as irrelevant. Remainder denied as request for finding.
5. Denied. On these facts, the developers may transfer the rights in the common area as they did.
5A. Denied. In creating the condominium, the developers reserved certain rights to remove property.
6. Paragraphs one and two are correct propositions of law, but are not the reason for Court’s decision. Paragraph 3, first sentence, denied as request for finding. Paragraph 3, last sentence allowed.
Action on Defendants’ Requests:
1. Allowed.
2. Allowed. Rights also governed by statute.
3. The master deed governs the rights of the developers.
4. See ruling no. 3.
5. Denied.
6. Denied.
7. Denied.
8. Denied as in proper form.
9. Denied.
10. Denied.
11. Denied.
12. Denied.
13. Denied.
14. Denied.
15. Denied.
16. Denied.
17. Denied as argument and request for finding.
18. Denied.
19. Denied.
20. Denied as irrelevant and argument.
21. Denied.
22. Denied.
ORDER FOR JUDGMENT
It is hereby ordered and declared that defendants may not prevent access to and use of the pool by the plaintiffs. The defendants are permanently enjoined from preventing plaintiffs’ access to and use of the pool. Defendants are further ordered to open the pool for the 1994 season and to jointly administer the pool facilities with the plaintiffs as provided in the condominium documents. The claim in Count II has been withdrawn by the plaintiffs, and Count II is therefore dismissed.

 Count II which claimed that defendants have engaged in a nuisance was withdrawn in open court.

 On cross-motions for summary judgment filed prior to trial, partial summary judgment entered in favor of Summit to the extent that the Court found that G.L.c. 183A (the condominium statute) had not been violated by the Hilitop Master Deed.

 Only those findings material to my rulings have been made.

 In pertinent part, section 14 provides:
14. PHASING PROVISIONS. Declarants’ Reserved Rights to Construct and Add Future Phases. The Condominium is planned to be developed as a phased condominium, each phase of which shall include one or more Buildings containing one or more Units, amenity buildings, garages or other site improvements. In order to permit and facilitate such development, the Declarants, for themselves and all their successors and assigns, hereby expressly reserve the following rights and easements:
(A) The Declarants hereby reserve for themselves, their heirs, successors and assigns, the right to remove from the land subject to the within Condominium the parcels known as and numbered 379, 387 and 411 Neponset Street, Norwood, Norfolk County, Massachusetts, which said parcels are referred to in said “Exhibit A” as “II. LOT B.” and “III. LOT C" and/or to remove any and all such portions at the parcel referred to in said “Exhibit A” as “I. LOTA,” provided however that said parcel “I. LOTA" shall and may not thereby be caused to be placed in violation of any City, State or Federal Ordinance, Regulation or Statute.
The Declarants hereby expressly reserve for themselves, their heirs, successors and assigns the right and easement to construct, erect and install on the Land on which the Condominium is located, in such locations as to the Declarants shall in the exercise of their discretion determine to be appropriate or desirable:
(a) Additional Building(s), each housing one or more Units: . . .
Section 14(G) gives the declarants the right to “designate certain portions of the Common Areas and Facilities as subject to the exclusive use of the units to be added to the condominium as part of future phase(s) . . .”

 The trustees, created by §5 of the Master Deed, are to manage and regulate the Hilltop condominium. The original trustees were Max B. Brenner and Mark Levy, the developers. Later "trustees were elected by unit owners. This procedure for the naming of trustees is not uncommon.

 It is unclear from the document whether the required 75% is to be 75% of the mortgagees and 75% of the owners or 75% of the total of both mortgagees and owners. The issue is not relevant to this case.

 That one of the declarants is the same as one of the original trustees is of no legal significance.